Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| DANIEL G. KRAFT<br><br>Demandante-Apelado<br><br>Vs.<br><br>EDUARDO E. ORTIZ RIVERA Y LADY ANNA M. APONTE VALIENTE<br><br>Demandados-Apelantes | TA2026AP00152 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV08637<br><br>Sala: 904<br><br>Sobre: INJUNCTION ESTATUTARIO LEY 129-2020 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Comparece la parte apelante, compuesta por Eduardo E. Ortiz Rivera y Lady Anna M. Aponte Valiente y la sociedad de bienes gananciales dispuesta por ambos, solicita la revisión de la *Sentencia* emitida el día 14 de enero de 2026 y notificada en igual fecha por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso de título. Por vía del dictamen apelado, el foro de primera instancia declaró "Ha Lugar" la *Demanda* de interdicto permanente con el propósito de suspender las operaciones de una escuela de *Brazilian Jiu Jitsu* en la unidad número 303 del Condominio Madrid. El foro primario también impuso a los apelantes el reembolso de los honorarios de abogado, así como costas y gastos a favor de la parte apelada, el señor Daniel G. Kraft por $5,000.00.

Por los fundamentos expuestos en este dictamen, *confirmamos* la sentencia apelada.

## -I-

La parte apelada presentó demanda el 25 de septiembre de 2025 titulada "Demanda de Injunction" al amparo del Artículo 39 de la Ley de Condominios. Solicitó el interdicto estatutario contemplado en Articulo 39 de la Ley de Condominios y una solicitud de expedición de una orden de interdicto preliminar y permanente según contemplado en el Artículo 675 del Código de Enjuiciamiento Civil. Esto debido a que:

> Las actuaciones de los demandados al operar un gimnasio o escuela de jiu-jitsu en el espacio de oficina #303 del Condominio Madrid viola el uso establecido para dicho apartamento en la Escritura Matriz de dicho condominio y es contrario a las normas fundamentales establecidas en la Ley de Condominios de Puerto Rico, Ley Núm. 129-2020.

Por ello, el apelado solicitó al foro de primera instancia una orden permanente de cese y desista al apelante "de la operación del gimnasio o escuela de jiu-jitsu, en el espacio de oficina #303 del Condominio Madrid y a que se abstengan de continuar creando ruidos y molestias indebidas al demandante y a los demás titulares del Condominio". La parte apelada alegó que, el uso del apartamento número 303 del Condominio Madrid no está contemplado en la designación de "espacio de oficina" que aparece en la Escritura Matriz para la unidad. En su *Contestación a la Demanda,* los apelantes aseveraron que la descripción de uso del apartamento número 303 en la Escritura Matriz del condominio como "Office Space Apartment" no impide la operación de la escuela de *jiu-jitsu* en el lugar.

El tribunal señaló una vista de entredicho provisional para el 10 de octubre de 2025. Durante la vista, las partes a través de sus respectivos abogados tuvieron oportunidad de postular a favor o en contra de sus posturas legales. Conforme surge de la *Minuta,* el tribunal limitó la controversia a "sí el local para oficina, según lo

establece la escritura matriz; ..., está siendo utilizado como un gimnasio. ...[E]n este caso es una de estricto derecho". En consecuencia, el foro apelado solicitó a las partes presentar memorandos de derecho en torno a la interpretación del uso adscrito en la escritura matriz para el apartamento número 303 del Condominio Madrid. En cumplimiento, las partes presentaron sus respectivos memorando de derecho. En 14 de enero de 2026 el tribunal adjudicó la controversia a favor de la parte apelada y prohibió la operación de una escuela de jiu-jitsu en el apartamento número 303 del Condominio Madrid. En la sentencia, el foro primario consignó las siguientes determinaciones de hechos:

1. El demandante, Daniel G. Kraft, es mayor de edad, soltero, ingeniero y titular del apartamento residencial #405 del Condominio Madrid, ubicado en el #1760 de la Calle Loíza en Santurce, Puerto Rico, 00911. Su dirección postal es la misma que la física.

2. Los demandados, los esposos Eduardo Ortiz Rivera y Lady M. Aponte Valiente, son los titulares del espacio de oficina #303 del Condominio Madrid. Su dirección física y postal es Oficina #303, 1760 Calle Loíza, Santurce, Puerto Rico, 00911.

3. El Condominio Madrid se encuentra sometido al Régimen de Propiedad Horizontal en virtud de la Escritura Número 2 otorgada ante el notario Héctor Ceinos el 15 de abril de 1975, la cual se encuentra debidamente inscrita en el Registro de la Propiedad sobre la finca principal donde enclava el mismo.

4. El Condominio Madrid es un edificio mixto de uso residencial y comercial. Se compone de un sótano con estacionamiento, una planta baja ("ground floor") y diez pisos de altura. Las áreas y elementos del Condominio se describen en el Término Cuarto de la Escritura Matriz de la siguiente manera:

   AREAS AND ELEMENTS OF THE CONDOMINIUM---------------------
   FOURTH: The MADRID CONDOMINIUM is composed of the following elements: -----------------
   (a) Private areas. ---------------------

(b) General Common Elements; and-------------------------------------
(c) Restricted Common Elements. --
A. PRIVATE AREAS: ------------------
(a) Residential apartments: Forty (40) residential apartments from the fourth floor to the tenth floor, both inclusive.---------------------
(b) Five (5) commercial spaces in the ground floor.----------------------
(c) Twelve (12) office spaces (second and third floors).--------------------
(d) Three (3) private spaces at the parking area.-------------------------

5. De manera que, la Escritura Matriz del Condominio Madrid es clara en establecer tres tipos de usos distintos para los apartamentos o áreas privadas del condominio. Estos tres usos se dividen en: (1) uso comercial general; (2) uso (comercial) de oficina, y (3) uso residencial.

6. En la primera planta o "ground floor" del Condominio Madrid hay cinco (5) áreas individualizadas de uso comercial exclusivamente. A esos fines, el Término Tercero de la Escritura Matriz dispone en su párrafo Dos lo siguiente:

DESCRIPTION OF THE BUILDING AND FACILITIES: ---------------------
THIRD: The description of the building, in general, is the following: ------------------------------

[...]

TWO: GROUND FLOOR:---It has a total area of SEVEN THOUSAND NINE HUNDRED FIFTY ONE SQUARE FEET (7951 sq. ft.), equivalent to SEVEN HUNDRED THIRTY NINE SQUARE METERS AND SIXTY THREE HUNDREDTHS OF A SQUARE METER (739.63 sq. mts.), more or less, and consists of the following:-----------------------
(a) Planting areas: --------------------
(b) Elevator's lobby; ------------------
(c) Elevator's well;--------------------
(d) Stairwell and stairs;---------------
(e) Electric chase;---------------------
(f) Five commercial areas numbered: one (1), two (2), three A (3 A), three B (3 B), and four (4) from East to West.-------------------
(g) Janitor's and compactor room;--
(h) Women and Men toilet room;----
(l) Main lobby and entrance, intercom and mall boxes.------------

7. Por su parte, tanto la segunda como la tercera planta del Condominio Madrid tienen cada una seis (6) espacios individualizados para uso de oficina ("office spaces") exclusivamente. A esos fines, el Término Tercero de la Escritura Matriz añade en su párrafo Tres lo siguiente:

> THREE: Floors two and three each have a total area of NINETEEN THOUSAND ONE HUNDRED FIFTY TWO SQUARE FEET (19,152 sq.ft.), equivalent to ONE THOUSAND SEVEN HUNDRED EIGHTY ONE SQUARE METERS AND FIFTY EIGHT HUNDREDTHS OF A SQUARE METER (1,781.58 sq.mts.), more or less, and each floor contains the following:---------
> (a) Six office spaces on each floor numbered from zero one (01) to zero six (06), preceded by the number of the floor in which they are located;----------------------------
> (b)Hall and elevator's lobby;---------
> (c) Stairwell and stairs;--------------
> (d) Elevator's well for two elevators;-----------------------------
> (e) Janitor's and compactor room with service sink;---------------------
> (f) Uncovered parking deck for twenty-five (25) cars and covered parking deck for five (5) cars at second floor level only;--------------
> (g) Cooling tower for air conditioning units in office spaces;-
> (h) Women and men toilet room;----
> (l) A private area along the East wall of the parking deck floor consisting of one hundred eighty square feet (180 sq. ft.), equivalent to sixteen square meters and seventy four hundredths of a square meter (16.74 sq. mts.) more or less, for other private use.--------

8. De la planta cuarta a la décima del Condominio Madrid hay cuarenta (40) apartamentos de uso residencial exclusivamente.

9. En cuanto al uso comercial, la distinción que se hace en la Escritura Matriz es clara a los efectos de que los apartamentos ubicados en la primera planta o "ground floor" son de uso comercial general, mientras que los apartamentos ubicados en la segunda y tercera planta son de uso comercial limitado a espacios de oficinas exclusivamente.

10. El apartamento del cual los demandados son titulares ubica en el #303 de la tercera planta y, a tenor con la Escritura Matriz, su uso se encuentra limitado a "espacio de oficina" ("office space").

11. De hecho, en la Escritura Matriz del Condominio Madrid el apartamento #303 del cual los demandados son titulares se describe de la siguiente manera:

> APARTMENT NUMBER: OFFICE SPACE THREE HUNDRED THREE (303).------------------------------------
> HORIZONTAL PROPERTY-Urban: Office Space apartment with irregular shape, located at the third floor of MADRID CONDOMINIUM, located at One Thousand Seven Hundred Sixty (1760) Loiza Street, Santurce, Municipality of San Juan, Puerto Rico, said apartment with an area of approximately one thousand two hundred nine (1209) square feet, equivalent to one hundred twelve (112) square meters, and its boundaries are as follows:-----------
>
> By the NORTH, in a distance of forty-four feet (44') with exterior space facing Loiza Street, separated by exterior wall and in four feet zero inches (4'-0") with Office Three Hundred
>
> Four (304) separated by wall; by the EAST, in a total distance of thirty six feet five inches (36'5") with the exterior space, Office Three Hundred Four (304) and common hall, separated by walls and the entrance door; by the SOUTH, in a distance of forty five feet seven inches (45'7") with Office Three Hundred Two (302) separated by interior wall and by the WEST, in a distance of twenty two feet eight inches (22'8") with the exterior space separated by wall.-----------------------------------
> The entrance of the apartment is located on its EAST boundary, connected with the hall elevator lobby of the floor with access to the outside.-------------------------------
> The above described apartment has a value of SIXTEEN THOUSAND EIGHT HUNDRED FIFTEEN DOLLARS ($16,815.00), and the following percentage in the

rights held in common and in the common expenses and profits: one and ninety eight hundredths of one per cent (1.98%).----------------------

12. Por su parte, el apartamento #405 del cual el demandante es titular, se encuentra en la cuarta planta del Condominio Madrid y, conforme a la Escritura Matriz, su uso es estrictamente residencial ("residencial apartment").

13. A pesar de lo dispuesto en la Escritura Matriz, desde o alrededor del 4 de agosto de 2025, los demandados comenzaron a usar su espacio de oficina en el #303 del Condominio Madrid como un gimnasio o escuela para la enseñanza y práctica del deporte o arte marcial conocida como Brazilian Jiu-Jitsu al público en general.

14. El Jiu-Jitsu o Ju-Jutsu es un arte marcial japonés clásico o koryū budō que abarca una variedad amplia de sistemas de combate modernos basados en la defensa «sin armas» de uno o más agresores tanto armados como desarmados. El Brazilian Jiu-Jitsu es una variante del mismo arte marcial.

15. El uso del apartamento #303 del Condominio Madrid como gimnasio o escuela para la enseñanza y práctica del deporte o arte marcial conocida como Brazilian Jiu-Jitsu es incompatible con el uso de "espacio de oficina" ("office space") para el cual dicha unidad está destinada en la Escritura Matriz.

16. El demandante ha denunciado la situación a la Junta de Directores del Consejo de Titulares del Condominio Madrid, quienes le han requerido por escrito a los demandados el cese y desista del uso de la unidad #303 en contravención al uso dispuesto en la Escritura Matriz.

17. El Reglamento del Condominio Madrid, mediante enmienda debidamente aprobada el 18 de febrero de 2025, reconoce en su Artículo 37 el derecho de todo titular del Condominio Madrid a ejercer acciones legales para evitar el incumplimiento con las disposiciones de la Escritura Matriz y el Reglamento del Condominio. También provee para el "reembolso de los honorarios de abogados y las costas y gastos en que incurra".

Sobre la base de las conclusiones de hechos antes transcritas el foro de primera instancia concluyó como cuestión de derecho:

> En la primera planta, el documento se refiere a "five commercial areas" o "cinco áreas comerciales", mientras que, en las plantas segunda y tercera, emplea el término "office spaces" o "espacios de oficina". Esta distinción difícilmente puede considerarse como una medida no intencional o carente de propósito. Si bien ambas categorías comparten un carácter comercial, no apuntan en la misma dirección. Conforme a la lógica expuesta en Soto Vázquez v. Vázquez Torres, *supra*, la referencia a "office spaces" o "espacios de oficina" implica una restricción adicional dentro de la categoría general de "uso comercial". Esta limitación debe entenderse como informada a los titulares o potenciales adquirentes. Íd., págs. 292-293. Entiéndase que, al adquirir la unidad #303, el matrimonio Ortiz-Aponte sabía o debió saber que el uso permitido para dicha unidad estaba circunscrito a "espacio de oficina".

En consecuencia, ordenó a "Eduardo Ortiz Rivera, Lady M. Aponte Valiente y la Sociedad Legal de Bienes Gananciales compuesta por ambos cesen y desistan, a partir de la fecha de esta Sentencia, de operar la escuela de Brazilian Jiu-Jitsu en la unidad #303 del Condominio Madrid. Ello, por constituir un uso incompatible con la Escritura Matriz del aludido inmueble".

Inconforme con el resultado, la parte apelante comparece y señala los siguientes errores:

> ERRÓ EL TPI AL INTERPRETAR RESTRICTIVA, ARBITRARIA Y CAPRICHOSAMENTE EL VOCABLO OFICINA Y LAS ACTIVIDADES COMERCIALES QUE PUEDEN REALIZARSE DENTRO DE LOS LOCALES O ESPACIOS COMERCIALES ASÍ CATALOGADOS Y, POR CONSIGUIENTE, AL DICTAR LA SENTENCIA ORDENANDO EL CESE Y DESISTA DE OPERAR LA ESCUELA DE JIU JITSU EN LA UNIDAD- 303 DEL CONDOMINIO POR CONSTITUIR UN USO INCOMPATIBLE CON LA ESCRITURA MATRIZ DEL CONDOMINIO.

> ERRÓ EL TPI AL IMPONERLE A LA UNIDAD- 303 RESTRICCIONES DE USO QUE NO SURGEN DE LA ESCRITURA MATRIZ, SIN TOMAR EN CONSIDERACIÓN EL PROCESO

LEGAL DE ENMIENDA A LA ESCRITURA MATRIZ DISPUESTO POR LA LEY DE CONDOMINIOS Y EN ABIERTA VIOLACIÓN A LOS DERECHOS PROPIETARIOS CONSTITUCIONALES DE LOS APELANTES.

ERRÓ EL TPI AL NO DAR DEFERENCIA A LAS AGENCIAS GUBERNAMENTALES ESPECIALIZADAS QUE OTORGARON EL PERMISO DE UNICO DE USO Y, DE FACTO, SUSTITUIR EL CRITERIO ESPECIALIZADO DE ESTAS, POR SU CRITERIO RESTRICTIVO, ARBITRARIO Y CAPRICHOSO DE LAS ACTIVIDADES COMERCIALES QUE PUEDEN REALIZARSE DESDE ESPACIOS CATALOGADOS COMO DE OFICINA.

ERRÓ EL TPI AL CONSOLIDAR LA ACCIÓN DE INJUNCTION ESTATUTARIO" AL AMPARO DE LA LEY DE CONDOMINIOS CON UNA ACCIÓN DE INJUNCTION PERMANENTE Y DECLARAR CON LUGAR UNA SENTENCIA SUMARIA QUE CONCEDE EL REMEDIO PERMANENTE SOLICITADO EN LA DEMANDA, A PESAR DE QUE LOS APELANTES SOLICITARON LA OPORTUNIDAD DE REALIZAR DESCUBRIMIENTO DE PRUEBA PARA OBTENER INFORMACIÓN SOBRE LA CONDUCTA DEL CONSEJO DE TITUALRES SOBRE LA TOLERANCIA DE USOS COMERCIALES Y DE PRESENTAR PRUEBA DE TESTIGOS Y PERITOS, LO QUE CONSTITUYÓ UN CLARO ABUSO DE DISCRECIÓN JUDICIAL QUE CONLLEVÓ LA VIOLACIÓN DE LOS DERECHOS PROCESALES Y PROPIETARIOS DE LOS APELANTES, NEGÁNDOLE ASÍ A LOS APELANTES UN VERDADERO Y EFICAZ DÍA EN CORTE.

ERRÓ EL TPI AL IMPONER A LOS APELANTES EL PAGO AL APELADO LA SUMA DE $5,000.00 POR MOTIVO DE REEMBOLSO DE HONORARIOS, COSTAS Y GASTOS

La parte apelada compareció mediante alegato escrito. Por tanto, procedemos a resolver el presente recurso con el beneficio de la comparecencia de las partes, el contenido del expediente electrónico y el derecho aplicable.

-*II*-

-*A*-

La Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, 31 LPRA sec. 1921, *et seq.*, se promulgó con el propósito de viabilizar la propiedad individual sobre una unidad de

apartamento que forma parte de un inmueble sometido al régimen de propiedad horizontal. *Con. Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 414 (2022). Mediante esta, se determinó el derecho de cada titular al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. Artículo 2 de la Ley de Condominios, 31 LPRA sec. 1921a.

La Ley de Condominios, rige el ordenamiento jurídico sobre la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. A este estatuto, le siguen la escritura matriz y el reglamento del condominio en cuestión. *Con. Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 413-414 (2022). La primacía del estatuto implica que, cualquier cláusula o regla claramente contraria a sus disposiciones sería nula. *Íd.*, pág. 414. El Tribunal Supremo resolvió que, las disposiciones de la Ley de Condominios son de carácter mandatorio y no supletorio. *Condominio First Federal v. LSREF2*, 202 DPR 934, 940 (2019).

La escritura matriz constituye "la fuente vinculante para los condóminos, luego de la Ley". M.J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 1ra ed., Río Piedras, Ed. Dictum, 1992, pág. 71. Es un estatuto privado, al cual se adhieren los titulares cuando compran sus respectivos apartamentos que gobierna a los condóminos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones violen la ley, la moral o el orden público. *Consejo Tit. Cond. McKinley Court v. Rullán*, 126 DPR 387, 394 (1990) *Consejo de Titulares v. Vargas*, 101 DPR 579, 582 (1973); *Soto Vázquez v. Vázquez Torres*, 138 DPR 282 (1995). La escritura matriz forma un estado de derecho que ha de ser aceptado por los sucesivos titulares a medida que éstos adquieran sus apartamentos en el régimen. *Bravman, González v. Consejo*

*Titulares Real*, 183 DPR 827, 845 (2011). Ésta constituye la "fuente vinculante para los condóminos, luego de la Ley". Godreau, *op. cit.*, pág. 71.

El Artículo 2 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921a, establece la política pública respecto al régimen de propiedad horizontal:

> Este capítulo se aprueba con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal, de acuerdo con los criterios que más adelante se establecen.
>
> El titular de un apartamento sometido al Régimen de Propiedad Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades.
>
> Cada titular reconoce que el ejercicio del dominio en el Régimen de Propiedad Horizontal está limitado por los derechos de los demás titulares y que el derecho de propiedad sobre su apartamento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno.
>
> En el ejercicio y el reclamo de sus derechos, los titulares actuarán conforme a los principios de la buena fe, de la prohibición de ir en contra de sus propios actos y la del abuso del derecho.

Esto, en sí mismo, constituye una limitación de las facultades inherentes al uso y disfrute de cada apartamento en interés de la colectividad. E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. FAS, 1974, T. II, pág. 275. Por ello, el legislador impuso ciertas limitaciones a la libertad a los propietarios al constituir un régimen de propiedad horizontal sobre una edificación. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.*, 133 DPR 488, 502 (1993). A tales efectos, exigió que, la escritura que establezca el Régimen de Propiedad Horizontal expresare clara y precisamente el destino y uso de toda área comprendida en el

inmueble. 31 LPRA sec. 1921c. En específico la Ley de Condominios de Puerto Rico requiere:

(a) Descripción del terreno y descripción general de lo allí construido, con expresión de sus respectivas áreas y materiales de construcción.

(b) Descripción de cada apartamento y número de cada uno, con expresión de sus medidas, situación, piezas de que conste, puerta principal de entrada y lugar con el cual inmediatamente comunique, y demás datos necesarios para su identificación.

(c) Descripción de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados a cierto número de apartamentos, con expresión de cuáles sean esos apartamentos.

(d) Indicación clara del destino dado al inmueble y a cada uno de sus apartamentos, con expresión de las restricciones que tenga tal uso.

(e) Superficie de la totalidad de los apartamentos en el inmueble y superficie de cada apartamento, fijándose de acuerdo con estas medidas el porcentaje que tengan los propietarios en los gastos, ganancias y derechos en los elementos comunes.

(f) Lo relativo a la administración del inmueble, en su caso.

(g) Cuanto más se refiere al inmueble y sea de interés hacerlo constar.

Artículo 12, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921k. (Énfasis nuestro.)

*-B-*

En su Artículo 39, la Ley de Condominios establece que "en el ejercicio de los derechos propietarios al amparo de esta Ley regirán los principios generales del derecho, particularmente, los enunciados en el Artículo 2 de esta Ley." Agrega que, la infracción de estos principios dará lugar "al ejercicio de la acción de daños y perjuicios por aquel titular u ocupante que resulte afectado, además de cualquier otra acción que corresponda en derecho, incluidos los interdictos… y cualquier otro remedio en equidad". 31 LPRA sec. 1922k.

**-C-**

La Regla 57 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 57, así como los artículos 675 a 689 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521 a 3566, regulan el auto de *injunction* o interdicto en Puerto Rico. El recurso extraordinario va encaminado a prohibir o a ordenar la ejecución de determinado acto, con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona o de restablecer el régimen de ley quebrantado por conducta opresiva, ilegal o violenta del infractor del orden jurídico. *Peña v. Federación de Esgrima de P.R.*, 108 DPR 147, 154 (1978). La mencionada regla establece tres modalidades de interdicto, a saber: el entredicho provisional –Regla 57.2 de Procedimiento Civil, *supra*; el interdicto preliminar –Regla 57.1 de Procedimiento Civil, *supra*; y el interdicto permanente. *E.L.A. v. Asoc. de Auditores*, 147 DPR 669 (1999).

En particular, el interdicto preliminar es una medida provisional que tiene el propósito fundamental de mantener el *status quo* hasta que se celebre el juicio en sus méritos. De esta manera, se evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Rullán v. Fas Alzamora*, 166 DPR 742 (2006); *Mun. de Ponce v. Gobernador*, 136 DPR 776 (1994); *Cobos Liccia v. DeJean Parking Co., Inc.*, 124 DPR 896 (1989).

La orden de interdicto preliminar puede ser emitida en cualquier momento antes del juicio, después de haber celebrado una vista para considerar la solicitud.[1] Durante la evaluación de la

---

[1] D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Programa de Educación Jurídica Continua Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, pág. 21.

concesión del interdicto, el tribunal debe considerar los siguientes criterios: (1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca en los méritos; (4) la probabilidad de que la causa se torne académica; y (5) el posible impacto sobre el interés público. Véase, *P.R. Telephone Co. V. Tribunal Superior*, 103 DPR 200 (1975). El peso de probar la concurrencia de estas circunstancias recae sobre el promovente del recurso. *Id.*

En esa misma línea, el interdicto permanente también requiere la consideración de la mayor parte de estos criterios, así como la celebración de una vista. *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333 (2001). Específicamente, el tribunal debe evaluar las siguientes circunstancias: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado; y (4) el balance de equidades. *Plaza Las Américas v. N & H*, 166 DPR 631 (2005); *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 372, nota al calce 11 (2000). Estos criterios, al igual que aquellos correspondientes al interdicto preliminar, no son absolutos; más bien, son "[d]irectrices que encausan la discreción del tribunal al determinar si la evidencia justifica el interdicto". *Plaza Las Américas v. N & H, supra.*

La vista de interdicto preliminar puede ser consolidada con la vista de interdicto permanente. *Torres Ponce v. Jiménez*, 113 DPR 58, 60 (1982). La orden del tribunal a esos efectos puede emitirse antes o después de comenzada la vista de interdicto preliminar. En lo pertinente, la Regla 57.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 57.1(b), dispone:

(b) *Consolidación de la vista con el juicio en sus méritos.* – Antes o después de comenzada la vista para considerar una solicitud de *injunction* preliminar, el tribunal podrá ordenar que el juicio en sus méritos se consolide con dicha vista. Aun cuando no se ordene la consolidación, cualquier evidencia que sea admitida en la vista sobre la solicitud de *injunction* preliminar y que sea admisible en el juicio en sus méritos, pasará a formar parte del récord del caso y no tendrá que presentarse nuevamente el día del juicio.

El Tribunal Supremo ha sido enfático al expresar que la expedición de una orden de interdicto preliminar o permanente depende inexorablemente de la existencia de un daño irreparable y la ausencia de otro remedio adecuado en ley para evitar el agravio. *Com. Pro Perm. Bda. Morales v. Alcalde*, 158 DPR 195 (2002). Un remedio adecuado es aquel que puede otorgarse en una acción por daños y perjuicios, en una criminal o cualquiera otra disponible. Por lo tanto, el daño será irreparable cuando no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. Véase, *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656 (1997); *Loíza Sugar Company v. Hernáiz y Albandoz*, 32 DPR 903 (1924).

Es norma reiterada que la concesión de un interdicto es de carácter discrecional. En atención a ello, el tribunal deberá realizar un estudio ponderado de las necesidades y los intereses de todas las partes involucradas en la controversia. *Mun. de Ponce v. Gobernador, supra*, págs. 790-791. Ante una demostración de la clara e intensa violación de un derecho el tribunal deberá expedir el recurso de interdicto. *A.P.P.R. v. Tribunal Superior*, 103 DPR 903, 906 (1975). Toda vez que la decisión de conceder o denegar la orden de interdicto descansa en el ejercicio de la sana discreción del tribunal, su determinación no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad

discrecional. *Peña v. Vergne de la Concha,* 37 DPR 285, 286-287 (1927).

### *-III-*

Al constituir el régimen horizontal sobre el Condominio Madrid el propietario primitivo cumplió con especificar, de forma clara y precisa, el uso destinado para cada apartamento en la Escritura Matriz. Artículos 4 y 13, Ley de Condominios de Puerto Rico, 31 LPRA secs. 1921c y 1921*l; Cond. Prof. S.J.H. Centre v. P.R.F., Inc., supra,* págs. 502-503. En consecuencia, los titulares del Condominio Madrid al comprar sus respectivos apartamentos llevaron a efecto un claro acto de adhesión a lo estipulado en la Escritura Matriz.

En cuanto al uso y destino de toda área comprendida en el Condominio Madrid, el Artículo 4 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921c, establece:

> La escritura que establezca el Régimen de Propiedad Horizontal expresará clara y precisamente el destino y uso de toda área comprendida en el inmueble, excepto que este capítulo autorice lo contrario, una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, excepto las modificaciones a la escritura matriz, con el fin de variar el uso de un apartamento de uno residencial a uno no residencial o viceversa, requerirán del consentimiento unánime de todos los titulares. Las disposiciones de variaciones de destino y uso en esta sección, con relación al número de votos requeridos, no se aplicarán a los inmuebles sometidos al Régimen de Propiedad Horizontal previo a la aprobación de esta ley, los cuales sólo se podrán modificar por unanimidad de los titulares.

La Ley de Condominios de Puerto Rico no dispone usos particulares, ni categoriza los usos a los que pueden destinarse los apartamentos particulares susceptibles de aprovechamiento individual. Tal determinación queda a cargo del propietario o los

propietarios que someten el inmueble al Régimen de Propiedad Horizontal, salvo las disposiciones respecto a las leyes, la moral y al orden público. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc., supra*, págs. 503-504. Basta con que, precisen e identifiquen ciertas clases de usos en términos amplios, y por definiciones de categorías como vivienda o uso comercial, y que informen debidamente y sin ambigüedades a los nuevos adquirentes y terceros, para que estos sepan a qué atenerse con respecto a los usos previstos para los diversos apartamientos susceptibles de aprovechamiento propio que conforman el condominio. F. Hernández Denton, *La Ley de Propiedad Horizontal: un análisis de las enmiendas de 1976*, 44 Rev. C. Abo. P.R. 257, 275 (1983); Véase, *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538 (1991).

El Condominio Madrid está sometido al Régimen de Propiedad Horizontal en virtud de la Escritura Número 2 otorgada ante el notario Héctor Ceinos el 15 de abril de 1975 debidamente inscrita en el Registro de la Propiedad. El Condominio Madrid es un edificio mixto de uso residencial y comercial. Conforme a la determinación de hecho número 10: "[e]l apartamento del cual los demandados son titulares ubica en el #303 de la tercera planta y, a tenor con la Escritura Matriz, su uso se encuentra limitado a "espacio de oficina" ("*office space*")". En la contestación a la demanda los apelantes admitieron operar una escuela de jiu-jitsu en el apartamento número 303 del Condominio Madrid:

> Se aclara que la Unidad-303 es utilizada por los Esposos Ortiz-Aponte para impartir clases de jiu-jitsu a adultos y niños(as). Se niega que la Unidad-303 sea utilizada como un gimnasio. En la Unidad-303 se encuentra establecida una "escuela de jui-jitsu", no un gimnasio (en adelante la "Escuela de Jui-jitsu"), lo que es una actividad de servicio profesional realizada por personal con conocimiento y adiestramiento especializado. Se alega en la afirmativa que al momento de emitir el Permiso

de Uso [según esta frase se define más adelante en este documento] la Oficina de Gerencia de Permisos de Puerto Rico ("OGPE") utilizó el vocablo "gimnasio" por carecer de otra definición aplicable a la expedición de permisos de usos para este tipo de escuelas.

El *Diccionario de la lengua española* define jiu-jitsu como un "[a]rte marcial de luchas sin armas". En específico, es un arte marcial japonés clásico o koryū budō. *Véanse*, Kiyose Nakae, *Ju Jutsu Complete*, Carol Publishing Group, 1958; Jun Shin Kigen Sha, *Yawara: The Ancient Japanese Martial Art of Ju-jutsu Zusetsu Juujutsu de Osano*, Tokio, Japón, 2001. Las técnicas básicas de batallas en este tipo de arte marcial incluyen luxaciones, puñetazos, patadas, rodillazos, esquivas, empujones, proyecciones, derribos, y estrangulamientos. *Íd.* La variación del yudo que, instruyen los apelantes en su escuela es un estilo de jiu-jistu desarrollado en Brasil a finales de los 1800s y principios de los 1900. Mol, Serge, *Classical Fighting Arts of Japan: A Complete Guide to Koryū Jūjutsu*, Tokyo, Japan: Kodansha International, pp. 24–54 (2001); Kanō, Jigorō, *A Brief History of Jujutsu, In Murata, Naoki*, ed. 2006, (2005). De allí su denominación de jiu-jistu brasilero. Stanley Virgílio, *Conde Koma – O invencível yondan da história*, Editora Átomo, pp. 22–25 (2002). La instrucción en este tipo de deporte o arte marcial es obtenida en escuelas de jiu-jistu. *Íd.*

El *Primer Diccionario General de la Lengua Española* define el vocablo "escuela" como una "[c]asa donde se enseña a leer y escribir a los niños", también como "[l]a enseñanza que se da en la escuela y toman los discípulos que asisten a ella". D. Roque Bárcia, *Primer Diccionario General de la Lengua Española*, T.III, Madrid, p. 497 (1881). También define la palabra como "[e]nseñanza de algunos ejercicios como de danzar, esgrimir, montar a caballo etc.", y como el "[e]dificio en que están las aulas

para enseñar ciencias". *Íd.* En contraste, una oficina es "el sitio donde se hace, se ordena o trabaja alguna cosa" o "[e]l sitio destinado para el trabajo de alguna secretaría, contaduría o cosa semejante". D. Roque Bárcia, *Primer Diccionario General de la Lengua Española*, T.III, Madrid, p. 1009 (1881). En consecuencia, es razonable concluir que, los constituyentes originales del Condominio Madrid al catalogar el apartamento número 303 como un lugar destinado a oficina vislumbraron ejercer en tal espacio trabajos de oficina propiamente, como, por ejemplo, ciencias secretariales, administrativas, distintos servicios profesionales o de consultoría. No la instrucción en artes marciales ofrecida por los apelantes que, más bien es aprendida en escuelas; un uso distinto al de oficina donde se ejecutan tareas atribuidas a profesiones de cuello blanco cuyos oficios son ofrecidos al público a cambio de una paga cierta, y no a deportistas o estudiantes de artes bélicas cuyo entorno de trabajo dista mucho del mobiliario clásico esperado en un lugar de trabajo oficinesco. Nuestra conclusión queda reforzada por la siguiente definición de oficina:

> Una oficina es el lugar donde se ejecutan tareas. Son recintos, que pueden tener dimensiones variadas y pueden ser uni o pluripersonales. Cuentan con mobiliario específico, entre los cuales podemos mencionar, escritorios, ficheros, sillas de escritorio, armarios, etcétera, y artículos electrónicos, especialmente computadoras, dependiendo del trabajo al que se destine la oficina. Deben cumplir ciertos requisitos, tanto técnicos como legales.
>
> H. Fingermann, (4 de abril de 2018), *Concepto de oficina*, Actualizado el 13 de febrero de 2024. https://deconceptos.com/ciencias-sociales/oficina (última vista, 13 de marzo de 2026).

La parte apelante, está obligada por el estado de derecho que creó la Escritura Matriz del Condominio Madrid. Por tanto, el uso pretendido por los apelantes para el apartamento número 303 quedó prohibido por la Escritura Matriz.

El foro de primera instancia actuó correctamente al emitir el interdicto permanente solicitado.

### -IV-

Por los fundamentos antes expuestos, *confirmamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones